UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| In re: | Chapter 13 |
|---|---|
| Luis Michael Virella,<br><br>Debtor. | Case No. 23-12179 (ABA) |
| Luis Michael Virella,<br><br>Plaintiff/Debtor<br><br>v.<br><br>TLOA of NJ, LCC,<br><br>Defendant. | Adversary Pro. No. 24-1084 (ABA) |

## MEMORANDUM DECISION

Before the court are the Motions filed by Luis Michael Virella (the "Debtor") to: (1) Reinstate the Automatic Stay as to creditor TLOA of NJ, LLC ("TLOA") in the above-referenced main bankruptcy case, Main Case Doc. No. 71; (2) Motion to Reconsider, Main Case Doc. No. 91; and (3) for a Preliminary Injunction filed in the above-captioned Adversary Proceeding, Adv. Pro. Doc. No. 13. The relief requested by all three Motions are inter-related as they basically rely on the identical premise of a substantial change in the law as a result of the decisions by the United States Supreme Court in *Tyler v. Hennepin County, Minnesota*, 598 U.S. 631 (2023) ("*Tyler*") and by the Appellate Division of the Superior Court of New Jersey in *257-261 20TH Avenue Realty, LLC, v. Roberto*, 477 N.J. Super. 339, 307 A.3d 19 (N.J. Super. Ct. App. Div. 2023) ("*Roberto*") holding that the retention of the excess value (or surplus) above the tax lien in a tax sale foreclosed property by a municipality or a third-party purchaser of tax sale certificate like TLOA violated the Takings Clauses of the United States and New Jersey constitutions. The court also queried whether it should abstain from deciding the issue. After conducting a hearing on the Motions on May 28, 2024, reviewing the submissions of the parties, and listening to their arguments, the court concludes that as a result of the substantial change in the law and this matter being "in the pipeline" when that substantial change in the law occurred, permissive abstention is not warranted and relief under the *Tyler* and *Roberto* cases must be afforded to the Debtor.

## JURISDICTION AND VENUE

This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),(G),(H) and (O), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28

U.S.C. § 157(a), and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## INTRODUCTION

We are here today because in the past year there has been a sea change in the law surrounding tax sales. In *Tyler*, the Supreme Court of the United States held that a local government's retention of the excess surplus equity in the home above the plaintiff's tax debt in a tax foreclosure plausibly alleged a violation of the Takings Clause of the United States Constitution.[1] Relying upon the new principle of law set forth in *Tyler* as well as Article 1, paragraph 20 of the New Jersey Constitution,[2] the Appellate Division of the Superior Court of New Jersey in *Roberto* then held that the Tax Sale Law, N.J. Stat. Ann. § 54:5-1 *et seq.* ("TSL"), which permits a municipality *or a third-party purchaser of a tax sale certificate* to retain a property owner's equity above the tax lien amount, is unconstitutional as the process results in a prohibited taking of a property owner's equity in a property. 477 N.J. Super. at 366. Its determination that the rule of law applies to third-party purchasers of a tax sale certificate in New Jersey and that "the TSL statutory framework that provides for the forfeiture of a property owner's equity after final judgment violates the Fifth Amendment Takings Clause in accordance with the decision in *Tyler*" *id.,* as well as, the New Jersey Constitution, persuades this court to conclude that under *Tyler* and *Roberto*, debtors in bankruptcy can seek to set aside the effects of a final judgment in foreclosure under the takings theory and address the claims related thereto in their bankruptcy cases.

Nevertheless, it is important to note that the *Roberto* court ruled that its new principle of law is limited, and it is only "accorded pipeline retroactivity to pending tax sale foreclosures involving a property owner's surplus equity." 477 N.J. Super. at 366. Thus, the issue to be addressed by the court today is whether the Debtor's cases, state court and/or current bankruptcy case, satisfy the "pipeline" requirement (i.e., are they in the pipeline) to afford the Debtor with the relief he seeks.

## PROCEDURAL HISTORY

A detailed discussion of the procedural history of this case, and the underlying state court matter, is necessary as it is relevant to the court's decision.

---

[1] The Takings Clause of United States Constitution provides "nor shall private property be taken for public use, without just compensation." U.S. Const., Amend. 5.

[2] Article I, paragraph 20 of the New Jersey Constitution provides: "Private property shall not be taken for public use without just compensation. Individuals or private corporations shall not be authorized to take private property for public use without just compensation first made to the owners." N.J. Const., Art. I, Para. 20.

TLOA filed an *in personam* tax foreclosure (F-004638-22) on May 11, 2022, Adv. Pro. Doc. No. 27, Ex. A,[3] against real property located at 611 N. Indiana Avenue, Atlantic City, NJ (the "Property") in connection with its Certificate of Tax Sale bearing number 19-00611 dated December 30, 2019 originally in the amount of $8,457.87. Main Case Doc. No. 23 and Adv. Pro. Doc. No. 27, p.4. A notice of *lis pendens* was recorded with the Atlantic County Clerk on June 20, 2022.[4] *Id.* at Ex. B. On June 24, 2022, TLOA requested Entry of Default. Adv. Pro. Doc. No. 27, Ex. A. Then TLOA filed a Motion to Enter Order Setting Amount, Time, and Place for Redemption on July 1, 2022. *Id.* On July 15, 2022, the state court set and fixed September 13, 2022 as the date and time by which the Debtor must redeem the Property by tendering $23,986.46. *Id.* at Ex. C. The Debtor did not redeem the Tax Sale Certificate and on October 13, 2022, the state court granted final judgment ("Final Judgment") holding that the Debtor "and any and all persons claiming by, from or under them or any of them stand absolutely debarred and foreclosed of and from all right and equity of redemption of, in and to the [Property] and every part thereof, and that an absolute and indefeasible estate of inheritance in fee simple is hereby vested in [TLOA]." *Id.* at Ex. D. The Final Judgment was recorded with the Atlantic County Clerk on October 21, 2022. *Id.* at Ex. E. None of this is disputed.

The Debtor attempted to set aside the Final Judgment in the state court but failed to do so. *See* Main Case Doc. No. 29. Indeed, despite several attempts, as of the return date of the Motions, May 28, 2024, the Debtor has not been successful in doing so.[5]

Prior to his removal from the Property under the Final Judgment, on March 17, 2023, the Debtor filed his Chapter 13 bankruptcy case. Main Case Doc. No. 1. The Debtor claimed ownership in the Property as a single-family home with a value of $124,000.00. *Id.* at p. 2. The Debtor claimed his full exemption in the Property under 11 U.S.C. §§ 522(d)(1) and (d)(5). Main Case Doc. No. 16, p. 10. The Debtor listed TLOA as his only secured creditor against the Property with a secured claim in the amount of $26,573.00. Main Case Doc. No. 1, p. 10. The Claims Register in the Main Case reflects no other creditor asserting a secured claim against the Property.[6] Thus, the Property has significant equity above the liens against it and the exemptions claimed. This fact is undisputed.

The remaining procedural history of this case presents a tortured history leading to where we find ourselves today.

---

[3] The court can take judicial notice of the docket entries in the state matters. Fed. R. Evid. 201, incorporated in these proceedings by Fed. R. Bankr. P. 9017. *See also, In re Soto*, 221 B.R. 343, 347 (Bankr. E.D. Pa. 1998).

[4] This is important for purposes of applying a statute of limitations. *See e.g., In re Stahlberger*, No. 20-23388-ABA, 2021 WL 509849, at *1 (Bankr. D.N.J. Feb. 10, 2021) (for preference or fraudulent claims, transfer of the property relates back to the date a *lis pendens* was filed).

[5] The Debtor's attempts to set aside the Final Judgment in state court will be addressed further below.

[6] The court can take judicial notice of the docket entries in this case. Fed. R. Evid. 201, incorporated in these proceedings by Fed. R. Bankr. P. 9017. *See In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 204 (3d Cir. 1995); *Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1200 n. 3 (3d Cir. 1991); *In re Aughenbaugh*, 125 F.2d 887, 889 (3d Cir. 1942).

The Debtor's initial chapter 13 and subsequently filed modified plans, Main Case Doc. Nos. 18, 22, and 48, proposed to pay the claim of TLOA *without interest* through the life of the Plan contrary to the express provisions of the Bankruptcy Code. *See* 11 U.S.C. § 506(b) (oversecured creditors are entitled to interest on their allowed claims). While not unusual, the Debtor's plans are silent as to how the Debtor will set aside the Final Judgment and recover the Property from TLOA. In the normal course of most chapter 13 cases, where a debtor seeks to recover their residence after a foreclosure is completed and then address that default through their chapter 13 plan, the debtor promptly files an adversary proceeding to recover the property in order to implement their plan. Here, no adversary proceeding was filed.

On April 4, 2023, TLOA filed an objection to confirmation of the Debtor's plan arguing that the Debtor did not own the Property because it had obtained the Final Judgment in the state court. TLOA averred that as a result of the Final Judgment, the Debtor's and the other defendant's equity of redemption in the Property was debarred under the express terms of the Final Judgment. *See* Main Case Doc. No. 23.

On May 16, 2023, the Debtor responded to the objection of TLOA suggesting that the Final Judgment constituted a taking in line with the Supreme Court's ruling in *Tyler* and also was a violation of the Excessive Fines Clause of the Eighth Amendment of the United States Constitution.[7] Debtor's counsel indicated that the Debtor was pursuing the setting aside of the Final Judgment on these grounds in the state court. *See* Main Case Doc. No. 26.

Then, on August 29, 2023, the Debtor filed a Motion to Reduce the Claim of TLOA. Main Case Doc. No 52. The sole basis for the motion was that TLOA did not file a proof of claim in the Main Case. Without citing any legal authority, counsel for the Debtor claimed that TLOA must be limited to a claim in the amount of what the Debtor set forth on his bankruptcy petition. But, what counsel for the Debtor failed to recognize was that the Property was not property of the bankruptcy estate and the Final Judgment made TLOA the lawful owner of the Property. As TLOA did not have a claim against the Debtor but rather the Property, and the Property was not property of the estate, TLOA need not file a claim.[8] What is more, since the Debtor had not been successful in setting aside the Final Judgment, there simply was no basis for the motion. While raised only in oral argument on the motion, counsel to the Debtor did not and was unable to articulate how *Tyler* was applicable to a tax foreclosure sale conducted by a private, nongovernmental entity — let

---

[7] While the Debtor has asked the court to "consider" his claim under his Eighth Amendment theory, *see e.g.*, Main Case Doc. No. 62, to be sure, the court has never seen this argument and the Debtor never provided any law or facts that support such a claim for the court to consider. What is more, no such claim is made in his Adversary Proceeding. Therefore, the court deems the argument abandoned and as such, it need not be addressed here and/or reconsidered.

[8] A proof of claim filed by a party who is not a creditor is not a properly filed proof of claim. *In re FirstPlus Fin., Inc.*, 248 B.R. 60, 70 (Bankr. N.D. Tex. 2000) (citing *In re Ellington*, 151 B.R. 90, 95 (Bankr. W.D. Tex. 1993)). "[L]ogic dictates that if one does not own a claim against the debtor, one may not file a claim against the debtor." *Ellington*, 151 B.R. at 95.

alone did the Debtor brief it.[9] Because of all of this, the Motion to Reduce the Claim of TLOA was denied.[10]

On October 13, 2024, TLOA filed its Motion for Stay Relief against the Property. TLOA's position remained the same: the Final Judgment terminated the Debtor's right to redeem under the TSL and the Debtor's plan could not be confirmed without its consent because the Debtor lacked a cognizable interest in the Property that may be revived through his Chapter 13 plan. Main Case Doc. No. 61. The Debtor responded with the same arguments: that unless TLOA was willing to accept payment of its claim as proposed in the Debtor's plan, the Debtor would seek to set aside the Final Judgment. Main Case Doc. Nos. 62 and 65. To date, there was no success in the state court and the Debtor did not file an Adversary Proceeding in this court. Frustratingly, the Debtor's filed pleadings simply included suggestions of legal theories with no proper analysis and again, counsel to the Debtor was unable to articulate how *Tyler* was applicable to a tax foreclosure sale conducted by a private, nongovernmental entity.[11] As the Debtor failed to set aside the Final Judgment in state court, failed to take any action in this court by way of an adversary proceeding, and failed to articulate how the *Tyler* case applied in this case, the Motion for Stay Relief was granted in favor of TLOA. Main Case Doc. No. 69.

On November 20, 2023, the Debtor filed his current Motion to Reinstate the Stay. Main Case Doc. No. 71. The basis for the motion was so that he could again apply to the state court to set aside the Final Judgment. Inexplicably, the Debtor was/is proceeding in state court as a self-represented litigant and without the assistance of counsel.

On January 12, 2024, counsel to debtor filed a letter and a copy of the *Roberto* decision on the Docket. Main Case Doc. No. 83. Counsel simply stated: "I believe this case has relevance with respect to the Debtor's pending Motion to Reinstate Stay as to Creditor TLOA of NJ, LLC. [Docket No. 71]." *Id.*  In response, TLOA correctly stated that it "is aware of this decision, but at present the Debtors have not raised any claim for avoidance or vacation of the Final Judgment in any court." Main Case Doc. No. 84.

On January 29, 2024, the Debtor filed a modified plan which accounted for a payment of interest on the claim of TLOA, Main Case Doc. No. 85, but the Final Judgment still had not been set aside in state court and no adversary proceeding to do so was filed in this court — something necessary for the implementation of the Debtor's plan.

Finally, on February 20, 2024, the Debtor filed his single Count Complaint in the Adversary Proceeding seeking to set aside the Final Judgment as a fraudulent transfer to TLOA under Section 548 of the Bankruptcy Code, 11 U.S.C. § 548. Adv. Pro. Doc. No. 1. Incredibly, despite having direct knowledge of the *Tyler* and *Roberto* cases, the Debtor failed to allege a cause

---

[9] *Roberto* had not been decided yet, the court was unaware that any such case was pending, and counsel to the Debtor provided no compelling argument.

[10] Astonishingly, as lately as the hearing on May 28, 2024, counsel to the Debtor still claims that TLOA should not be paid its full claim because it did not file a proof of claim — as if the issue had not already been decided!

[11] *Roberto* still had not been decided yet and the court was still not unaware of it pending.

of action in his Complaint under the Takings Clauses as established in those cases! Then, through an improper Order to Show Cause, the Debtor sought to enjoin any eviction action that TLOA may undertake with regard to its Final Judgment. Adv. Pro. Doc. Nos. 3 and 7. In its opposition to the Order to Show Cause, TLOA correctly noted that the relief sought must be by injunctive relief not an Order to Show Cause. Adv. Pro. Doc. No. 10.

At the hearing on the Order to Show Cause, the court reminded Debtor's counsel, that as a result of the court's rulings in *In re Wright*, 649 B.R. 625 (Bankr. D.N.J. 2023) and *In re Wright*, No. 20-12415-ABA, 2023 WL 3560551 (Bankr. D.N.J. May 18, 2023), *aff'd* Civil No. 2988 (RBK) (D.N.J. May 30, 2024), under his original Complaint, the recovery for the Debtor would be limited. The court afforded the Debtor an opportunity to amend his complaint to allege a claim under the *Tyler* and *Roberto* cases and to file a proper pleading with regard to injunctive relief.

On March 13, 2024, the amended pleadings were filed. Adv. Pro. Doc. Nos. 13 and 15. On that same day, despite the pending Motion to Reinstate the Stay in the Main Case and the Motion for Preliminary Injunction in the Adversary Proceeding, the Debtor also filed his Motion to Reconsider the court's order granting stay relief. Main Case Doc. No. 91. TLOA filed an opposition to the Motion for Preliminary Injunction, Adv. Pro. Doc. No. 17, and an opposition to the Motion to Reconsider. Main Case Doc. No. 93.

A hearing was held on the Motion for a Preliminary Injunction at which time the court advised the parties that it was inclined to adopt the reasoning of the *Tyler* and *Roberto* cases but issues remained as to whether this matter remained in the pipeline for application of the *Tyler* and *Roberto* cases as discussed by the *Roberto* court. A briefing schedule and return date were set. Counsel to TLOA graciously agreed TLOA would not take any action until the court rendered its final decision, and, thus the court did need not enter a temporary order staying everything.[12]

While preparing for oral argument, the court concluded that it required additional briefing from the parties regarding the "overarching issue" of "whether or not this case is still 'in the pipeline' to be governed under the new law presented." Specifically, in an April 8, 2024 email correspondence to counsel, Main Case Doc. No. 94, the court requested that parties brief "whether or not this case is 'in the pipeline' and whether because this bankruptcy case has not been confirmed, has sought to address the Debtor's claim from its inception, and the issue not having been resolved whether this constituted 'in the pipeline'." Finally, the court noted that the "in the pipeline" issue may more appropriately be decided by the state court and, consequently, the court would consider whether to permissively abstain from deciding the pipeline issue.

Thereafter, the Chapter 13 Trustee sought to file an *amicus curiae* brief and there was no opposition thereto filed. Adv. Pro. Doc. Nos. 19 and 26. The Chapter 13 Trustee timely filed his Answer to Amended Complaint. Adv. Pro. Doc. No. 27. The Chapter 13 Trustee argued that the Debtor satisfied the necessary requirement for pipeline retroactivity and that the court should decline to permissively abstain from deciding the pipeline retroactivity issue.

---

[12] Unfortunately, Debtor's counsel did not reciprocate with this graciousness in agreeing to maintaining the status quo because less than 2 hours before the hearing on the preliminary injunction and abstention, she directly requested the Clerk's Office to enter Default against TLOA.

The parties have made their submissions, Main Case Doc. Nos. 96 and 98, and Adv. Pro. Doc. Nos. 21, 23, 24 and 27, a hearing was held, and the matters were taken under advisement. The record is closed and the matter is ripe for disposition.

## DISCUSSION

### Debtor's Attempts to Set Aside Final Judgment in State Court[13]

On November 28, 2022, the Debtor filed a pro se motion alleging "Fraud in the conduct of the suit." Adv. Pro. Doc. No. 27, Ex. F. Because that motion was not submitted with the proper filing fee the Debtor resubmitted his *pro se* motion with the proper fee on December 12, 2022. Adv. Pro. Doc. No. 27, Ex. G. The December 16, 2022, docket entry notes that, "[t]he motion filed on 12/12/2022 will be decided on 01/06/2023. Oral argument has been requested. You will be notified when oral argument is scheduled. Do not come to the courthouse unless you are so notified." Adv. Pro. Doc. No. 27, Ex. A. TLOA filed its objection to the Debtor's motion on December 23, 2022. Ex. H. On January 6, 2023, the state court issued an order stating: "THIS MATTER having been opened to the Court for a Motion to Stay by Defendant Luis Virella *pro se*, who failed to appear…ORDERED: Defendant's Motion to Stay is hereby DISMISSED WITHOUT PREJUDICE for failure to appear." Adv. Pro. Doc. No. 27, Ex. I.

On November 20, 2023, the Debtor also filed a second *pro se* motion in the foreclosure action alleging "Fraud in the conduct of the suit." Adv. Pro. Doc. No. 27, Ex. K. Because that motion was not submitted with the proper filing fee on December 6, 2023, the Debtor refiled his motion and submitted the requisite payment. Adv. Pro. Doc. No. 27, Ex. A, and Ex. L. The December 7, 2023, docket entry reads: "The motion filed on 12/06/2023 will be decided on 01/05/2024. Oral argument has been requested. You will be notified when oral argument is scheduled. Do not come to the courthouse unless you are so notified." Adv. Pro. Doc. No. 27, Ex. A. On December 18, 2023, TLOA filed an objection to Debtor's motion. Adv. Pro. Doc. No. 27, Ex. M. The January 3, 2024, docket entry reads: "The motion filed on 12/06/2023 was rescheduled to 01/05/2024. Oral argument has been requested. You will be notified when oral argument is scheduled. Do not come to the courthouse unless you are so notified." Adv. Pro. Doc. No. 27, Ex. A. Only two (2) days after the Debtor *pro se* filed his second motion before the Superior Court, the Superior Court of New Jersey, Appellate Division, issued the *Roberto* decision.

On January 5, 2024, the state court issued an order on the Debtor's second motion which reads: "THIS MATTER having been opened to the Court for a Motion for Fraud in the Conduct of the Suit by Defendant Luis Virella pro se, who failed to appear…ORDERED: Defendant Luis Virella's Motion for Fraud in the Conduct of the Suit is hereby DENIED for failure to appear." Adv. Pro. Doc. No. 27, Ex. N. Nothing has transpired since then.

---

[13] These undisputed facts are taken directly from the Chapter 13 Trustee's submission. Adv. Pro. Doc. No. 27.

## The Court Declines to Invoke Permissive Abstention

At first, the court believed it might be appropriate to permissively abstain under 11 U.S.C. § 1334(c) from deciding the issue of whether the case was in the pipeline for purposes of applying the *Tyler* and *Roberto* cases. Generally,

> [p]ermissive abstention "allows a court to abstain from hearing a particular matter arising under title 11 or arising in or related to a case under title 11, in the interest of justice or in the interest of comity with state courts or respect for state law." *In re Vanhook*, 468 B.R. 694, 700 (Bankr. D.N.J. 2012). New Jersey courts consider several factors in determining when to abstain. *See Shalom Torah Centers v. Philadelphia Indem. Ins. Cos.*, No. 10-6766 (FLW), 2011 WL 1322295, at *4 (D.N.J. Mar. 31, 2011). The courts recognize, however, that not all factors need to be considered in all cases and that their importance will "vary with the particular circumstances of each case" such that "no one factor is necessarily determinative." 2011 U.S. Dist. LEXIS 35726, [WL] at *4.

*In re Mendez*, 600 B.R. 321, 334 (Bankr. D.N.J. 2019). Generally, seven factors are considered when a court is evaluating whether permissive abstention is warranted. Those factors include:

> (1) the effect on the efficient administration of the bankruptcy estate;
> (2) the extent to which issues of state law predominate;
> (3) the difficulty or unsettled nature of the applicable state law;
> (4) comity;
> (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
> (6) the existence of the right to a jury trial; and
> (7) prejudice to the involuntarily removed defendants.

*Jazz Photo Corp. v. Dreier LLP*, No. Civ.A. 05-5198DRD, 2005 WL 354268 at *7-*8 (D.N.J. Dec. 23, 2005) (citing *In re Donnington*, 194 B.R. 750, 756-59 (Bankr. D.N.J. 1996)). A bankruptcy court exercises a "high degree" of inherent discretion in determining whether to exercise its authority to permissively abstain under Section 1334(c). *Wright v. Trystone Capital Assets, LLC*, No. 20-cv-15017 (RBK), 2021 WL 3561218, at *3 (D.N.J. Aug. 11, 2021) (quoting *In re Barsan Contrs., Inc.*, Civil No. 10-3081, 2010 WL 3907116 at *7 (Sept. 30, 2010)).

After considering the submissions of the parties, the court declines to permissively abstain. First, deciding the issue here has a positive effect on the administration of this case. Confirmation of the Debtor's chapter 13 plan that provides for the payment of TLOA's claim against the Property can only be implemented through the setting aside of the Final Judgment. The Adversary Proceeding seeks to do that. The Debtor has demonstrated that he is unable to achieve this necessary step in state court on his own. Indeed, equity weighs in favor of the court protecting the Debtor's interest in the Property in this forum rather than the state court where he lacks counsel to explain the applicability of *Tyler* and *Roberto*. Here, perhaps Debtor's counsel can achieve the desired result which will allow for an effective administration of the estate.

Next, while state law predominates, it only does so through the *Roberto* court's interpretation of federal law. Nonetheless, the court is not required to consider all factors when making its determination. *Mendez*, 600 B.R. at 334.

Third, *Roberto* was clear in its finding that the TSL is unconstitutional where a tax foreclosure sale results in the property owner being deprived of his equity above the tax lien and applies to third-party purchasers of a tax sale certificate in New Jersey. Therefore, the nature of the law is neither difficult nor unsettled.

Fourth, comity is achieved through this court's reliance on and application of the *Roberto* case thereby showing the court's mutual respect and courtesy to the state court.

Next, there is no remoteness as the issue presented in the Adversary Proceeding is fundamentally related to the main bankruptcy case as avoidance of the Final Judgment is crucial to the implementation of the proposed chapter 13 plan.

Finally, the remaining elements do not apply as there is no request for a jury trial and there is no prejudice to TLOA which is already the defendant in the Adversary Proceeding. There are no other parties involved.

Accordingly, the court declines to permissively abstain.

## The Cases Are in the Pipeline

The Appellate Division of the New Jersey Superior Court recently noted that "[i]n the civil context, pipeline retroactivity of a new rule of law contemplates that three classes of litigants will be beneficiaries: those in all future cases, those in matters that are still pending, and the particular successful litigant in the decided case." *Roik v. Roik*, 477 N.J. Super. 556, 574, 308 A.3d 754, 765 (App. Div. 2024) (quoting *N.H. v. H.H.*, 418 N.J. Super. 262, 285 (N.J. Super. Ct. App. Div. 2011)); *Beltran v. Delima*, 379 N.J. Super. 169, 176-77, 877 A.2d 307 (N.J. Super. Ct. App. Div. 2005) (pipeline retroactivity applies to "to all prejudgment matters pending in the trial courts and to those matters that [were] on direct appeal").

Here, whether the court examines the proceedings in state court or the bankruptcy court, the Debtor has pending motions challenging the forfeiture of his equity in the Property in both forums.

The undisputed timeline shows that within five (5) months of the entry of the Final Judgment (October 13, 2022), the Debtor filed his Chapter 13 case and proposed a plan which provided for the payment of TLOA's claim. Then, within three (3) months of the bankruptcy filing, the United States Supreme Court decided *Tyler*. Questions remained as to the applicability of *Tyler* to third-party purchasers of a tax sale certificate. Then, within seven (7) months of the *Tyler* decision, the Appellate Division of the Superior Court of New Jersey decided *Roberto* finding that *Tyler* applied to third-party purchasers of a tax sale certificate. Less than three (3) months later, the Debtor filed the Adversary Proceeding.

Deficiencies and missteps aside, without question the Debtor immediately attempted to address the claim of TLOA against the Property via payment through his Chapter 13 plan. The plan could only be implemented through the setting aside of the Final Judgment. Undoubtedly, the Debtor could have avoided the Final Judgment — with limitation, *see Wright*, 649 B.R. 625 and *Wright*, 2023 WL 3560551 — under the original count in the original Complaint. And therefore, the plan which needed the avoidance of the Final Judgment could have been implemented. Since no confirmation hearing took place, the issue remained open.

While a judgment in foreclosure may seem to be final and remove the Debtor from the pipeline, this is not strictly the case. In state court, the Debtor has, albeit unsuccessfully, been trying to set aside the Final Judgment via motions alleging fraud in the conduct of the suit. The Debtor filed his first motion a mere ten weeks after entry of the Final Judgment. The state court has never considered the merits of any motion Debtor filed regarding the tax foreclosure sale opting at each instance to dismiss the motions for failure to appear. The state court's January 6, 2023 order specifically dismissed the Debtor's motion "without prejudice" and the state court's January 5, 2024 order did not specify that the motion was dismissed with prejudice, and, thus is construed to be a dismissal without prejudice. *Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 611 (3d Cir. 2020) (a dismissal without prejudice is a dismissal that does not constitute an adjudication upon the merit)s; *Connors v. Sexton Studios,* 270 N.J.Super. 390, 393 (N.J. Super. Ct. App. Div. 1994) (holding that dismissal of a complaint for failure to appear should be without prejudice absent "egregious conduct"). Consequently, the Debtor may refile his motion.[14] As a court of equity, I am disposed to broadly interpret the facts in favor of the Debtor, who is proceeding *pro se* in state court, and conclude that the Debtor's past and current efforts to vacate the Final Judgment indicate that a matter is pending in the state court for purposes of pipeline retroactivity.

Additionally, the court also notes that the Third Circuit prefers matters be decided on their merits. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984); *Scarborough v. Eubanks*, 747 F.2d 871, 878 (3d Cir. 1984). Given that the Debtor has the ability to re-file his motion in state court and the lack of a merits decision on any of his motions to vacate, the court would be remiss in concluding that the Debtor does not have a pending matter for purposes of pipeline retroactivity.

Even if a matter is not pending in state court for purposes of retroactivity, the Debtor has pursued the return of the Property since the inception of his bankruptcy case. In fact, the very purpose of this case was to regain the Property. Other than a car loan, TLOA is the Debtor's only secured creditor. The Debtor's plan, Main Case Doc. No. 18, and modified plans, Main Case Doc. Nos. 22, 48, and 85, specifically provide for the satisfaction of TLOA's claim. The Debtor initially filed an adversary complaint alleging a violation of 11 U.S.C. §548 because the amount TLOA paid was much less than a reasonably equivalent value. Adv. Pro. Doc. No. 1. The Debtor then amended his complaint to allege that the Final Judgment violated the Fifth Amendment Takings Clause and the New Jersey Constitution. These steps are necessary prerequisite to Debtor regaining an equitable or legal interest in the Property, the Property becoming part of the estate, and the Debtor satisfying TLOA's claim.

---

[14] During oral argument there were some representations made that the Debtor, acting *pro se*, was again attempting to vacate the Final Judgment in state court.

*Tyler* has upended the tax sale foreclosure process in numerous states and in my view established a new cause of action to void a property transfer. In New Jersey, the New Jersey Supreme Court issued a July 10, 2023 Order that temporarily suspended the Office of Foreclosure's recommendations of final judgment in tax sale certificate cases pending as of May 25, 2023. *Tyler* recognized a property owner's right to retain the equity above the amount of the tax lien. The Supreme Court of the United States acknowledged that equity theft resulting from tax sale foreclosures violated a constitutional property right. The Debtor has alleged the TSL as applied to the Property deprived him of his equity and an unconstitutional taking occurred. Although the court has not worked through all the ramifications of *Tyler* and *Roberto*, it appears that the Debtor has plausibly alleged an entitlement to recover either the property or money damages as a result of either his Section 548 claim or his Takings Clause claims. Thus, I conclude that this bankruptcy case and its related adversary proceeding constitute a pending matter sufficient to satisfy pipeline retroactivity.

The court is also not moved by TLOA's argument that the tax foreclosure action is fully and finally adjudicated, and that the Debtor may not use bankruptcy court proceedings to void the transfer of the Property.

The Bankruptcy Code offers debtors and trustees several ways to seemingly reverse final judgments under state law. The Bankruptcy Code sets forth several avenues to avoid transfers: 11 U.S.C. §§ 522, 544, 545, 547, 548, and 549. *See In re Hackler*, 938 F.3d 473, 475 (3d Cir. 2019) (affirming the bankruptcy court's conclusion that transfer of real estate title conducted via New Jersey's TSL was void preferential transfer under § 547(b)); *In re Smith,* 811 F.3d 228 (7th Cir. 2016) (setting aside Illinois tax sale foreclosure pursuant to Sections 522(h) and 548); *In re Hamilton*, 125 F.3d 292, 298 n.8 (5th Cir. 1997) ("By its own terms, section 544(a)(3) allows a party to avoid a foreclosure sale, and therefore to avoid the transfer that divested debtor of title to the foreclosed property, revesting title in the debtor."); *In re GGI Props., LLC*, 568 B.R. 231, 249 (Bankr. D.N.J. 2017) (voiding the transfer of property pursuant to the New Jersey TSL as a fraudulent under 11 U.S.C. § 548); *In re Elam*, 194 B.R. 412, 415 (Bankr. E.D. Tex. 1996) (noting debtor may bring avoidance action pursuant to Sections 522(h) and 549); *In re Wentworth*, 197 F. App'x 579 (9th Cir. 2006) (trustee, pursuant to Section 545, may avoid statutory lien enforced at foreclosure sale prior to filing of the bankruptcy case); 4 Collier on Bankruptcy P 522.12.

Additionally, I observe Congress has amended the Bankruptcy Code to aid debtors in preserving ownership of their homes via payment of arrearages of the course of a plan. Other courts have noted that "[t]he flexibility permitted in the formulation of Chapter 13 plans represents a central element in the implementation of the Congressional goal to encourage expanded use of Chapter 13. A main area of expansion was the Code's recognition of the desire of homeowners to save their homes through Chapter 13. . . Section 1322(b)(5) was intended to codify the practice under which foreclosure was enjoined during the pendency of a Chapter XIII, with the debtor given a reasonable time to cure defaults." *In re Placidi*, No. 5:07-bk-51657 R, 2008 WL 474239, at *2 (Bankr. M.D. Pa. Feb. 21, 2008) (quoting *In re Hoggle,* 12 F.3d 1008, 1110 (11th Cir.1994)). The court acknowledges that Sections 1322 and 1325 only allow a debtor to cure tax or mortgage arrearages prior to the foreclosure sale. Nevertheless, this statutory language demonstrates

Congress's commitment the importance of offering a debtor every opportunity to save a residence through the bankruptcy process.

The court is not swayed by TLOA's arguments regarding finality because the Bankruptcy Code and a plethora of cases demonstrate that bankruptcy courts are empowered to void property transfers effected by state tax sale foreclosures and state court proceedings.

Finally, the *Rooker-Feldman* doctrine does not apply. The *Rooker-Feldman* doctrine generally prevents parties from bringing claims in federal district courts when the plaintiff in federal court seeks to void the state court judgment. *Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 163–64 (3d Cir. 2010). The Debtor is alleging independent federal claims — which he could not allege in the state court action — under Section 548 to avoid the foreclosure as a fraudulent transfer and the Takings Clause to show equity theft. Although the Section 548 claim and the Takings Clause claim are closely related to the state foreclosure judgment, that by itself does not mean that *Rooker-Feldman* applies. *Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (presenting independent claims that are similar to state court claims is not an impediment to federal jurisdiction). The court's consideration of the Section 548 and Takings Clause claims is not a review and rejection of the state court foreclosure judgment because the court can assume the state court reached a proper foreclosure judgment, but then independently decide whether the foreclosure could be avoided as a fraudulent transfer under Section 548 or as an impermissible taking under the Fifth Amendment and/or the New Jersey Constitution. *See In re Philadelphia Ent. & Dev. Partners*, 879 F.3d 492, 500-01 (3d Cir. 2018) (*Rooker-Feldman* does not apply to a fraudulent transfer action); *In re Lowry*, No. 20-1712, 2021 WL 6112972, at *3 (6th Cir. Dec. 27, 2021); *In re Isaacs*, 895 F.3d 904 (6th Cir. 2018) (*Rooker-Feldman* does not apply to causes of action brought under Code Section 544); *In re Sasson*, 424 F.3d 864, 871 (9th Cir. 2005) (*Rooker-Feldman* does not bar the exercise of federal bankruptcy power and bankruptcy courts may avoid state judgments in core bankruptcy proceedings, under Sections 544, 547, 548, 549, may modify judgments under 11 U.S.C. §§ 1129, 1325, and, may discharge judgments under 11 U.S.C. §§ 727, 1141, 1328).

What is more, New Jersey Court Rule 4:50-1(f) purports to allow a state court to vacate a final judgment due to a substantive change in law. That Rule reads:

> On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a)… or (f) any other reason justifying relief from the operation of the judgment or order.

N.J. Ct. R. 4:50-1. Along with that, the 1-year time limitation on a motion for relief from a judgment does not apply to subsection (f) but only requires a motion under subsection (f) "be made within a reasonable time." N.J. Ct. R. 4:50-2. Surely a substantive change in the law resulting in a fair and just result would be a proper reason justifying relief from the Final Judgment. *See Manning Eng'g, Inc. v. Hudson Cnty. Park Comm'n*, 74 N.J. 113, 122, 376 A.2d 1194, 1199 (1977) ("a court should have authority under it to reopen a judgment where such relief is necessary to achieve a fair and just result."). When setting aside a judgment within a reasonable time courts consider: "(1) the extent of the delay in making the application; (2) the underlying reason or cause; (3) the fault or blamelessness of the litigant; and (4) the prejudice that would accrue to the other party." *Parker v.*

*Marcus*, 281 N.J. Super. 589, 593 (N.J. Super. Ct. App. Div. 1995) (*citing Jansson v. Fairleigh Dickinson Univ.*, 198 N.J. Super. 190, 195 (N.J. Super. Ct. App. Div. 1985)).

The court agrees with the Chapter 13 Trustee in his pleading. The Debtor, proceeding as a self-represented litigant in the foreclosure action, clearly did not understand the complexities of the case and/or how to properly plead it. The motions were dismissed without prejudice and nothing has been decided on the merits. The Debtor's Chapter 13 case was filed only five (5) months following the foreclosure judgment and the proposed plan attempted to address TLOA's claim on the Property. The chapter 13 plan is still pending. There has been a substantial change in the law since the entry of the Final Judgment and the filing of the bankruptcy case that applies in this situation. The Debtor is not to blame as he has been trying to set aside the Final Judgment since almost immediately after it was entered. There is no prejudice to TLOA as it has not evicted the Debtor and will be satisfied on its entire claim. The status quo remains in place.

Thus, this court concludes that Debtor's had a pending cause of action at the time *Tyler* and *Roberto* were handed down and he is entitled to pipeline retroactivity in order to continue his challenge of the alleged taking of his excess equity.

### The Debtor is Entitled to a Preliminary Injunction

"Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994) (citations omitted). "[O]ne of the goals of the preliminary injunction analysis is to maintain the status quo, defined as the last, peaceable, noncontested status of the parties." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citations omitted). In *In re Wedgewood Realty Group, Ltd.*, 878 F.2d 693 (3d Cir. 1989), the Third Circuit provided the necessary elements needed to be established to obtain a preliminary injunction:

(1) substantial likelihood of success on the merits;
(2) irreparable harm to the movant if the requested relief is denied;
(3) harm to the movant outweighs any harm to the non-movant; and
(4) granting the injunctive relief would not violate the public interest.

878 F.2d at 701. Here, the Debtor satisfies all four elements.

First, "[i]n the bankruptcy context, reasonable likelihood of success is equivalent to the debtor's ability to successfully reorganize." *In re Union Tr. Phila., LLC*, 460 B.R. 644, 660 (E.D. Pa. 2011) (citation omitted). What is more, a "plaintiff need only prove a prima facie case, not a certainty that he or she will win." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001). The Debtor's chapter 13 plan here provides for the recovery of the Property through payment of the claim of TLOA in full. Recovery of the Property will be through the Adversary Proceeding which is needed to implement the chapter 13 plan. The court has already concluded that the Fifth Amendment Takings Clause and the New Jersey Constitution provide debtors in bankruptcy cases with the opportunity to set aside the effects of a final judgment in foreclosure and to address the claims related thereto in their bankruptcy cases. This case is in the pipeline and

there is a likelihood of success based on the current status of the law and the Debtor will be able to successfully reorganize upon effectively challenging the Final Judgment here. This element favors the Debtor.

Second, "[t]o establish irreparable harm, a movant must demonstrate 'an injury that is neither remote nor speculative, but actual and imminent'." *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir.1989) (quoting *Consolidated Brands, Inc. v. Mondi,* 638 F.Supp. 152, 155 (E.D.N.Y.1986)) (additional citations omitted); *In re Sterling*, 543 B.R. 385, 396–97 (Bankr. S.D.N.Y. 2015). Here, the harm is not remote or speculative, but rather actual and imminent. The Debtor has not prosecuted the Adversary Proceeding and likewise, there is no state court determination setting aside the Final Judgment. If the court does not currently enjoin TLOA at this stage, it would immediately evict the Debtor, depriving him of his home and income opportunity. In addition, the Debtor would be deprived of the equity in the Property — something the *Roberto* court said he is entitled to. *Roberto*, 477 N.J. Super. at 366. This element favors the Debtor.

Third, the harm to the Debtor outweighs any potential harm to TLOA, as the loss of the Debtor's home and rental income far surpasses any impact on TLOA, especially considering TLOA's claim is addressed in the Debtor's chapter 13 plan and would be paid in full, with interest as provided for by the TSL. TLOA will receive, albeit delayed, the full benefit of its bargain. This inconvenient delay in receiving full payment of its claim does not outweigh the immediate irreparable harm that would be incurred by the Debtor — loss of home and income. This element favors the Debtor.

Lastly, granting the preliminary injunction serves the public interest rather than violates it by giving citizens like the Debtor the opportunity to save their homes through the bankruptcy process (another Constitutional right, Art. I., Sect. 8.) and by further safeguarding them from unlawful takings by the government and/or a third-party tax sale certificate holder in violation of the Fifth Amendment Takings Clause and under the New Jersey Constitution. *Roberto*, 477 N.J. Super. at 366. Clearly, protecting the Debtor's rights at this stage does not violate public interest but rather promotes it. This element favors the Debtor.

With the necessary elements satisfied in favor of the Debtor and with the status quo being maintained, *Kos Pharms.,* 369 F.3d at 708, the request for a preliminary injunction is granted and TLOA may not enforce its rights and remedies under the Final Judgment without further order of this court.

This concludes the court's finding of facts and conclusions of law.

## CONCLUSION

Accordingly, this court for all of foregoing reasons concludes the Debtor is entitled to retroactive application of *Tyler* and *Roberto* and that the Adversary Proceedings should go forward.

Because the Debtor has finally gotten around to pleading a proper cause of action invoking the takings theory set forth in the *Tyler* and *Roberto* cases, and because the court finds that this case was in the pipeline when those cases were decided, and finally, because the court declines to permissively abstain from deciding the matter, the Debtor may proceed with the Adversary Proceeding seeking to set aside the transfer of the Property to TLOA as an unlawful taking. Consequently, the court will grant the preliminary injunction enjoining TLOA from enforcing it rights and remedies against the Property until the Adversary Proceeding is finally concluded.

As a result of the issuance of the preliminary injunction, the Motion to reinstate the stay, Main Case Doc. No. 71, and the Motion for Reconsideration, Main Case Doc. No. 91 are moot – if not redundant.

The parties are instructed to confer to determine if proceeding with the Adversary Proceeding is necessary and if so, provide a joint scheduling order setting forth the time for: TLOA to file a responsive pleading (an Answer or otherwise); discovery; and dispositive motions. The court will set a trial date once that joint scheduling order is provided.

An appropriate judgment has been entered consistent with this decision.

The court reserves the right to revise its findings of fact and conclusions of law.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: June 18, 2024